897 P.2d 1362

Esther MALDONADO, Appellant,

v.

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency,

and

Broadway Southwest Stores, Appellees.

No. 1 CA–UB 92–0125.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 8, 1994.

Review Denied July 11, 1995.

Esther Maldonado, in pro. per.

Grant Woods, Atty. Gen. by Bonnie E. Elber, Asst. Atty. Gen., Phoenix, for appellee Arizona Dept. of Economic Sec.

## OPINION

KLEINSCHMIDT, Judge.

Esther Maldonado challenges a decision made by the Appeals Board of the Arizona Department of Economic Security affirming earlier decisions disqualifying her from receiving unemployment insurance benefits. Maldonado failed to appear for a hearing on her claim for benefits and the Board, applying its rule that a failure to appear can only be excused if the absence was the result of something beyond the reasonable control of the claimant, refused to hear her case on the merits. The issue on appeal is whether the narrow construction which the Board appears to have given the rule conflicts with the purpose of the unemployment benefits statute. We hold that it does, and we remand for a reconsideration of whether Maldonado should receive a hearing on the merits of her claim.

Maldonado began receiving unemployment insurance benefits in January 1991. In February 1991, she worked for Broadway Southwest for two days but never told the Department about the employment. The Department subsequently discovered that Maldonado had worked for Broadway Southwest. On December 12, 1991, the Department determined, without Maldonado's participation, that Maldonado voluntarily left her employment at Broadway Southwest without good cause and thus was disqualified from receiving further unemployment benefits.

The Department gave Maldonado fifteen calendar days from December 12, 1991, to file an appeal. Maldonado did not file an appeal until February 19, 1992. The Appeal Tribunal scheduled a hearing for March 12, 1992, to determine the reason for Maldonado's untimely appeal, but Maldonado failed to appear for that hearing. Because Maldonado defaulted, the Appeal Tribunal, without considering the merits of the case, upheld the Department's decision to disqualify her from receiving unemployment insurance benefits.

Maldonado filed a timely application to reopen the case. The Appeal Tribunal conducted a second hearing to determine if good cause existed for Maldonado's failure to appear at the March 12, 1992 hearing. Maldonado testified that she did not appear for the March 12, 1992 hearing because she confused the hearing date with a counseling appointment for her daughter and miscalendared the hearing. The Appeal Tribunal concluded that Maldonado's failure to appear was without good cause and directed that its March 12, 1992 disposition remain in effect, again without considering the merits of any excuse for filing her appeal late. Thereafter, Maldonado timely petitioned for review to the Appeals Board which affirmed the Appeal Tribunal's decision. Maldonado timely appeals that decision to this Court.

In deciding that Maldonado's failure to appear for the March 12, 1992 hearing was without good cause, the Tribunal and the Board relied on Arizona Administrative Code ("A.A.C.") R6–3–1503(B)(3)(d) which provides that:

> Good cause warranting reopening of a case shall be established upon proof that both the failure to appear and failure to timely

notify the hearing officer were *beyond the reasonable control* of the nonappearing party.

(Emphasis added.) The Appeals Board concluded that the reason for Maldonado's failure to appear and failure to timely notify the hearing officer, namely her miscalendaring the hearing, was not beyond her reasonable control. It is not possible to tell from the record precisely why the Board concluded that Maldonado's failure to appear at the hearing should not be excused. Certainly, if the Board did not believe her explanation, it would have been well within its discretion in refusing to hear the case on the merits. We believe, however, based on the argument it makes in its brief, that the Board placed an interpretation on the rule that is inconsistent with the purpose of the unemployment benefits statutes. The Board urges:

> Although Appellant had an excuse for not appearing at the hearing, her mistake was not beyond her control. Such things as road conditions, traffic accidents, or other emergencies would be beyond the reasonable control of an applicant.

Such an interpretation of the rule, we believe, frustrates the purpose of the statute.

■ The purpose of the Employment Security Act is to lighten the burden of unemployment which "often falls with crushing force upon the unemployed worker and his family" and "limiting the serious social consequences of poor relief assistance." Ariz.Rev. Stat.Ann. ("A.R.S.") § 23–601. It is remedial legislation and should be given a liberal interpretation to effectuate its purpose. *Castaneda v. Arizona Dep't of Econ. Sec.*, 168 Ariz. 491, 496, 815 P.2d 418, 423 (App.1991); *Warehouse Indem. Corp. v. Arizona Dep't of Econ. Sec.*, 128 Ariz. 504, 507, 627 P.2d 235, 238 (App.1981); *Southwest Lumber Mills v. Employment Sec. Comm'n*, 66 Ariz. 1, 5, 182 P.2d 83, 87 (1947). We recognize that the interpretation an administrative agency places on its own rule must be accorded deference. However, a device which would defeat the legislative purpose is to "be frowned upon and stricken down." *South-*

*west Lumber Mills*, 66 Ariz. at 5, 182 P.2d at 87; *see also Hilde v. Arizona Dept. of Econ. Sec.*, 166 Ariz. 498, 803 P.2d 909 (App.1990) (stating that jurisdictional rule requiring requests for review contain "citations to record, rules and other authority" defeats the purpose of the unemployment compensation statute). Unless precluded by a narrow statute, it is appropriate for courts to determine the scope of an administrative agency's review. FRANK E. COOPER, STATE ADMINISTRATIVE LAW, Vol. II, p. 664 (1971).

■ The rule defining good cause for reopening only for circumstances "beyond the reasonable control" of the claimant as the Appeal Tribunal and Board appears to have applied it in this case undermines the remedial purpose of the Employment Security Act because it does not allow the reviewing authority to exercise sufficient discretion in deciding whether or not to excuse a failure to appear. Even in the more rigorous arena of the superior court, a default judgment may be set aside on the lesser showing of "excusable neglect." Ariz.R.Civ.P. 60(c). We believe that the standard that must apply in cases like this one is, at the very least, one of excusable neglect. It is not unusual, nor grossly negligent, for people to miscalendar appointments, and such has often been found to be an excusable mistake. *See Kohlbeck v. Handley*, 3 Ariz.App. 469, 472, 415 P.2d 483, 486 (1966) (setting aside a default because inexperienced secretary failed to enter deadline on calendar); *Coconino Pulp & Paper Co. v. Marvin*, 83 Ariz. 117, 121, 317 P.2d 550, 553 (1957) (holding that a secretary's failure to deliver calendar sheet was excusable neglect). *See also Quality Inns Int'l, Inc. v. Tampa Motel Assoc., Ltd.*, 154 F.R.D. 283 (M.D.Fla.1994); *Araujo–Sanchez v. Amoon*, 513 So.2d 1307 (Fla.App.1987); *Faulkner v. Public Employees' Retirement Sys.*, 47 Cal.App.3d 731, 121 Cal.Rptr. 190 (1975); *Gibson v. Unemployment Ins. Appeals Bd.*, 9 Cal.3d 494, 108 Cal.Rptr. 1, 509 P.2d 945 (1973).

The dissent merits comment. It suggests that our decision should be based on whether

the Board abused its discretion in refusing to consider the claim on its merits. This case does not present that question. We simply say that the Board applied the wrong standard—a standard that excessively constrained its discretion. Because the Board had broader discretion than it apparently understood itself to have, we remand for a proper exercise of its discretion.

The dissent also asks whether it is to be the "rule that anyone who can invent a plausible excuse for failure to appear can now obtain a new hearing?" Not at all. If the Board believes that an excuse is "invented" it is free to rule—indeed should rule—against hearing the claim on the merits. The point is, all explanations must be considered based on a standard that is consistent with the purpose of the unemployment compensation laws.

■ The dissent also suggests that the acceptance of Maldonado's excuse will pave the way for others who seek to be heard on the merits even though they have not met the procedural deadlines which govern their claims. It is true that the application of our opinion may allow more claims than would otherwise be heard on the merits to be resolved in that way. That, however, is our purpose and our point. Claims *should* be heard on their merits if the failure to comply with a deadline or attend a hearing is of the type which can be said to be excusable.

It is ordered remanding this case to the Appeals Board to reconsider, under the standard we have described, whether the Appellant should be heard on the question of whether her untimely filing should be excused.

LANKFORD, P.J., concurs.

GARBARINO, Judge, dissenting:

The facts are simple. Maldonado filed an untimely request for reconsideration of a determination disqualifying her from receiving unemployment insurance benefits. A hearing to consider the request was scheduled for March 12, 1992. After receiving notice of the hearing to determine the untimeliness issue, she failed to appear on the day of the hearing. The Appeals Tribunal reviewed the record and upheld the deputy's determination. Maldonado filed a timely application to reopen the case contending that she failed to appear on the day of the hearing because she confused her daughter's counseling appointment with the hearing date. The Appeal Tribunal, after a hearing, concluded that Maldonado's failure to appear and failure to notify the hearing officer were within her reasonable control and not grounds for reopening her case. Maldonado filed a timely petition for review with the Appeals Board. After granting review, the Appeals Board affirmed the decision of the Appeals Tribunal and after an additional review reaffirmed their earlier decision. Maldonado timely appeals that decision to this Court.

The issue before the Appeal Tribunal was not complicated. Was Maldonado's excuse for failing to appear good cause to reopen the case? The determination was made and affirmed that Maldonado's confusion was within her reasonable control and did not constitute good cause.

Simply stated, because it disagrees with the outcome, the majority finds that the agency's interpretation of the wording of the A.A.C. R6–3–1503(B)(3)(d) does not comport with its notion of fair play. Not being able to find that there was an abuse of discretion, the majority has decided to change the rules by interpreting the present rule to suggest something other than what is obviously meant by the rule. The majority attempts to make a black cow white by saying that black means white.

I would suggest that we make our decision based upon the record keeping in mind that we must determine if the Appeals Board's decision was arbitrary, capricious or an abuse of discretion. *Avila v. Arizona Dep't of Economic Sec.*, 160 Ariz. 246, 248, 772 P.2d 600, 602 (App.1989). We must view the evidence in a light favorable to upholding the decision of the Appeals Board and must affirm the

decision if it is supported by any reasonable interpretation of the record. *Ross v. Arizona Dep't of Economic Sec.*, 171 Ariz. 128, 129, 829 P.2d 318, 319 (App.1991).

The record supports the Appeals Board's decision. Maldonado gave no reason why the calendaring was not within her reasonable control. Other than her "excuse," she presented no other evidence of a mistake. The calendar was not evidence at the hearing. The decision was not arbitrary, capricious or an abuse of discretion.

Is it to be the rule that anyone who can invent a plausible excuse for failure to appear can now obtain a new hearing? Does this mean that the agency's interpretation of a regulation placing a restriction on a claimant is too restrictive because we say it is too restrictive? Maldonado's excuse, if accepted, paves the way for a panacea of excuses for failure to appear.

The majority's answer, in addressing a case it feels unfairly decided, is to change the interpretation of the rules to achieve a result it feels is fair.

In this case, the majority contends that the rule as interpreted is too restrictive and undermines the remedial purpose of the Employment Security Act. However, it is well-settled that an administrative agency's interpretation of statutes and of its own regulations is entitled to great weight. *Capitol Castings, Inc. v. Arizona Dep't. of Economic Sec.*, 171 Ariz. 57, 60, 828 P.2d 781, 784 (App.1992).

When a discretionary call is lacking in fairness, we do not change the rules. Our role is to provide guidance as to the use of discretion when applying the existing rules. There is nothing subversive about A.A.C. R6–3–1503. It does not corrupt or undermine the Employment Security Act. Its application can be harsh or fair depending upon the exercise of discretion. If we have difficulty with the outcome of this case, our inquiry should not be directed at the interpretation of the rule but with the exercise of discretion.

The majority makes a good argument for a new interpretation of the rule by comparing A.A.C. R6–3–1503 to Arizona Rules of Civil Procedure 60(c), a rule adopted by our Supreme Court. However, I know of no authority for the proposition that agency procedural regulations are invalid merely because they are more restrictive than rules of procedure adopted by the courts.

I would affirm.